UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL L. KOELLING,           )
                               )
        Plaintiff,             )
                               )
                               )
        v.                     )      No.  4:04CV383 CEJ
                               )
JO ANNE B. BARNHART, Commissioner )
of Social Security,            )
                               )
        Defendant.             )
                               )

**MEMORANDUM AND ORDER**

This action is before the Court under 42 U.S.C. §§ 405(g) and
1383(c)(3) for judicial review of the denial of plaintiff's
applications for Disability Insurance Benefits under Title II of
the Social Security Act and Supplemental Security Income under
Title XVI of the Act.

**I.   Procedural History**

On May 28, 2002, plaintiff Michael Lee Koelling filed an
application for Supplemental Security Income payments pursuant to
Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.
(Tr. 29-33) and for Disability Insurance Benefits pursuant to Title
II of the Social Security Act, 42 U.S.C. §§ 401, et seq.  (Tr. 80-
82).   In the Disability Report Adult he completed and filed in
conjunction with the applications, plaintiff stated that his
disability began on May 12, 2001, due to chronic back pain, lumbar
disc herniation, and three herniated discs.  (Tr. 5, 86-95).  On

initial consideration, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 25-28, 34-35, 37-38, 62-65). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on June 30, 2003. (Tr. 56-61; 210-24). Plaintiff testified at the hearing and was represented by counsel. (Id.). In a letter dated October 28, 2003, the ALJ informed plaintiff's counsel that he had secured additional evidence and would enter such evidence into the record. (Tr. 41-46). In response, counsel submitted a letter commenting on the report of Dr. Bobby Enkvetchakul. (Tr. 39-40). Thereafter, on November 21, 2003, the ALJ issued a decision denying plaintiff's claims for benefits. (Tr. 7-19). On February 21, 2004, the Appeals Council found no basis for changing the ALJ's decision and denied plaintiff's request for review of the ALJ's decision. (Tr. 3-6). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on June 30, 2003

#### 1. Plaintiff's Testimony

At the hearing on June 30, 2003, plaintiff testified in response to questions posed by the ALJ and counsel. (Tr. 210-24). At the time of the hearing, plaintiff was twenty-five years of age. (Tr. 213). Plaintiff testified that his date of birth is November 8, 1977. (Tr. 213). Plaintiff completed the tenth grade. He can

read and write but has problems with multiplication and division. (Tr. 213-14). Plaintiff stands at five-feet eleven inches and weighs 288 pounds. (Tr. 214).

Plaintiff testified that he first injured his back in March 2001 while working staking trusses. (Tr. 214-15). Plaintiff tried to untangle two trusses and one snapped loose and knocked him backwards. (Tr. 215). Plaintiff testified that he had injured his back once before in 1999 while pushing a cart, but he was able to return to work. (Tr. 215).

Plaintiff sought medical treatment for herniated discs at L5-S1 and bulging discs at L3-L4 and L4-L5. (Tr. 215). The injury also impinged on his nerve running down his leg. (Tr. 216). Plaintiff testified that he has not had surgery since the accident, and no doctor has recommended surgery as treatment. Plaintiff testified that he has pain all of the time underneath the bottom part of his shoulder blades. (Tr. 216). The pain is caused by claimant trying to pick up anything. (Tr. 216). Plaintiff ranked his pain level at a five with weather, lifting objects, and repetitive motion causing his pain to increase. (Tr. 217). Plaintiff ranked his worse pain level at a nine or ten lasting a day or sometimes a week. (Tr. 217).

Plaintiff testified that a doctor has imposed a weight lifting limitation of ten pounds and ordered him not to do any repetitive bending, twisting, lifting, pushing, pulling, carrying, climbing,

or other similar tasks. (Tr. 217-18). Plaintiff further indicated that he is not supposed to handle any weight over his head or away from his body. Plaintiff should change positions frequently. (Tr. 218). On April 15, 2002, Dr. Volarich ordered plaintiff to avoid remaining in a fixed position, including sitting or standing, for more than thirty to forty-five minutes at a time. (Tr. 219). Leaning forward while sitting helps with his pain because the leaning separates the vertebrae from pushing down on the disc. (Tr. 221-22). Plaintiff testified that he can drive not more than one-half hour before he has to stop and move around. (Tr. 218). Plaintiff testified that his pain interferes with his sleep, because he cannot lie on his back or stomach to sleep. (Tr. 219). Sometimes, plaintiff wakes up twenty times during the night. He stays awake long enough to smoke a cigarette. (Tr. 219). Plaintiff also reported problems walking due to his pain. (Tr. 220). He testified that he has high blood pressure causing him dizziness and headaches. (Tr. 221).

Plaintiff has a worker's compensation plan because of his injuries. (Tr. 219). He does not have medical insurance and lacks the funds for prescription medications. (Tr. 220). He testified that if a doctor recommend surgery, and he was awarded benefits, he would be willing to have the surgery. (Tr. 220).

Plaintiff testified that he has not received any medical treatment in the last year, because he has does not "have any way

- 4 -

to get treatment." (Tr. 222). Based on the gap in treatment, the ALJ decided to order an orthopedic exam to update plaintiff's position. Plaintiff's counsel argued that plaintiff meets the listing of 1.04. (Tr. 222).

### 2. Open Record

During the hearing, the ALJ determined that the record needed to be further developed and stated that the record would be held open so that plaintiff could have an orthopedic examination. In a letter dated October 28, 2003, the ALJ apprised plaintiff's counsel that he had secured the additional evidence, and that he proposed to enter the orthopedic consultative examination in the record after counsel's review. (Tr. 41-42). A review of the record shows that counsel timely submitted a letter commenting on Dr. Bobby Enkvetchakul's report, the additional evidence submitted by the ALJ, to the ALJ before he issued a decision denying plaintiff's claims for benefits. (Tr. 10-19, 39-40, 200-07).

### 3. Forms Completed by Plaintiff

In the Disability Report Adult completed by plaintiff on June 11, 2002, plaintiff indicated that he became unable to work because of his conditions on May 12, 2001. (Tr. 87). In response to listing his current medications, plaintiff indicated that he takes Aleve for pain relief. (Tr. 92).

### III. Medical Records

On May 8, 2001, Dr. Glenn Hogancamp treated plaintiff's back

pain caused by a work-related injury one month earlier. (Tr. 133). Dr. Hogancamp diagnosed low back strain and possible herniation and prescribed Flexeril and Aleve. In a follow-up visit on May 16, 2001, plaintiff reported that he stopped taking Flexeril because it made him feel like a zombie. Plaintiff rated his back pain at the level of a six and indicated laying down flat on the floor provides relief. Dr. Hogancamp noted that plaintiff experiences discomfort in forward bending and tilting to either side. Dr. Hogancamp scheduled plaintiff for an MRI and ordered plaintiff to continue taking Ibuprofen. (Tr. 133).

The MRI of plaintiff's lumbar spine performed on May 24, 2001, revealed right posterolateral disc protrusion with abutment and possible impression upon the exited nerve root. (Tr. 135).

In the Worker's Compensation Treatment Form dated May 21, 2001, Dr. Hogancamp opined that plaintiff could return to work the next day, but that he could not work near moving machinery and could not lift more than thirty-five pounds. (Tr. 131). He diagnosed plaintiff as having low back pain and suspected herniated lumbar disc, and scheduled plaintiff for follow-up treatment in ten days. (Tr. 131). Plaintiff returned for a follow-up visit on May 29, 2001, and reported continued discomfort in his lower back with forward bending. (Tr. 132). Dr. Hogancamp noted that the MRI revealed bulging discs at L3-L4, L4-L5, and L5-S1 of plaintiff's lower back. Dr. Hogancamp instructed plaintiff to continue taking

generic Tylenol and told plaintiff that if his disc problem worsened, he might need surgery. (Tr. 130). His diagnosis included degenerative disc disease and bulging discs. Dr. Hogancamp placed the following limitations on plaintiff: no prolonged standing or walking; no climbing, bending, or stooping; and lifting no more than fifteen pounds. Dr. Hogancamp opined that plaintiff's low back strain has been resolved and scheduled claimant for a follow-up visit on June 12, 2001. (Tr. 130).

On June 12, 2001, plaintiff returned for follow-up treatment for back pain at the Capital Region Medical Clinic and reported experiencing pain at the level of seven to eight. (Tr. 128). Plaintiff reported being fired from his job. Even though Dr. Hogancamp restricted him to no lifting, plaintiff reported increased back pain without improvement. (Tr. 128). In the Worker's Compensation Treatment Form, Dr. Hogancamp opined that plaintiff would be unable to return to work due to his degenerative disc disease until treated by another physician. He referred plaintiff to a neurosurgeon for treatment of his lumbar degenerative disc. (Tr. 128, 129).[1] According to a note dated June 26, 2001, plaintiff was scheduled to see Dr. Conway on August 6, 2001, and was directed to bring the MRI films. (Tr. 128).

On August 14, 2001, Dr. Robert Conway, a clinical PM & R at

---

[1]Dr. Hogancamp's finding as related to claimant's worker's compensation claim is not binding on the Social Security Administration. See 20 C.F.R. §§ 404.1504, 416.904.

the University Hospital, evaluated plaintiff for an aggravation of lumbar spondylosis. (Tr. 185). Plaintiff's chief complaint of pain covers the middle and lower back area with the pain radiating to the lateral thighs bilaterally. (Tr. 184). Plaintiff explained that he started experiencing pain after a work-related accident in March, 2001. Plaintiff reported seeing a chiropractor with limited benefit from treatment but not having physical therapy treatment. Dr. Conway noted that the MRI revealed a right L5-S1 paracentral disc herniation. Plaintiff reported being fired from his job after the accident. Plaintiff also reported that he smokes one and a half packs of cigarettes each day. (Tr. 184). Dr. Conway opined that he was uncertain if the lumbar disc herniation revealed on the MRI was a result of the accident inasmuch as plaintiff's symptoms did not correlate well with the location of the disc herniation. (Tr. 185). Dr. Conway opined that plaintiff would benefit from physical therapy and referred him for flexibility exercises and progression to lumbar stabilization. Dr. Conway prescribed Naprosyn and placed plaintiff on a ten-pound lifting restriction. (Tr. 185).

On September 5, 2001, Shari Kicker, a physical therapist at HealthSouth, evaluated plaintiff's lower back pain. (Tr. 174). Plaintiff reported receiving treatment from a chiropractor but not having any relief from his pain symptoms. (Tr. 174). As treatment, Ms. Kicker recommended skilled rehabilitative therapy in

conjunction with a home exercise program to improve plaintiff's range of motion of his lumbar spine and pain. (Tr. 175). Ms. Kicker opined that plaintiff's overall rehabilitation potential was good and noted that plaintiff tolerated the treatment/therapeutic activity with mild complaints of pain. Ms. Kicker recommended that plaintiff attend rehabilitative therapy three times a week for two weeks. (Tr. 175).

Plaintiff returned on September 7, 2001, and reported soreness after completing the home exercise program. (Tr. 172). Ms. Kicker noted that he tolerated the treatment/therapeutic activity with moderate complaints of pain and difficulty and recommended that plaintiff continue skilled rehabilitative therapy. (Tr. 173). Plaintiff cancelled his scheduled appointment on September 10, 2001. (Tr.171). He returned for treatment on September 12, 2001 and reported that the exercises increased his pain. (Tr. 169). Ms. Kicker noted that plaintiff tolerated the treatment with marked complaints of pain and difficulty. (Tr. 170). During the September 14, 2001 session, plaintiff reported any prolonged position being uncomfortable and exercises being painful. (Tr. 167). Ms. Kicker noted that plaintiff tolerated the therapeutic activity with mild complaints of pain and difficulty. (Tr. 168).

In a visit on September 17, 2001, plaintiff reported increased pain at a level seven, aggravated by sitting, bending, and arching backwards. (Tr. 165). Ms. Kicker noted that plaintiff tolerated

the therapy with marked complaints of pain and difficulty and decided to reevaluate his treatment plan after his next doctor's visit. (Tr. 166). On September 19, 2001, plaintiff reported how performing the exercises increased his pain symptoms. (Tr. 163). Ms. Kicker determined that plaintiff had achieved fifty percent of the goals set for therapy and referred him to a physician for a re-examination. (Tr. 163). Ms. Kicker noted that plaintiff demonstrated a decreased lumbar range of motion limited by complaints of pain with his symptoms increasing with repeated movements. (Tr. 163). Plaintiff reported his functional capability to include sitting comfortably for fifteen minutes, walking a half a mile without resting, and bending forward at the waist mildly limited. (Tr. 158).

In a follow-up visit on September 21, 2001, plaintiff reported increased back pain after starting physical therapy. (Tr. 183). Plaintiff reported not being able to work with the restrictions and not taking any medications. He admitted not filling the Naprosyn prescription he received from Dr. Conway during the last office visit because a number of prescriptions previously prescribed by other doctors "have made him feel funny." (Tr. 183). Examination revealed plaintiff's straight leg raise to be negative and a moderately decreased lumbar range of motion in all planes. Dr. Conway noted that plaintiff had some mild tenderness to the lumbar paraspinals bilaterally. Dr. Conway found that the MRI showed

evidence of a lumbar disc herniation but no clear radiculopathy symptoms. As treatment for pain relief, Dr. Conway recommended performing an epidural steroid injection, continuing physical therapy program, and taking Naprosyn. (Tr. 183).

On October 8, 2001, Dr. John Lucio, D.O., at the Center for Pain Management, on referral by Dr. Conway, performed an epidural steroid injection as treatment for plaintiff's aggravation of his lumbar spondylosis. (Tr. 139). Dr. Lucio noted that he performed the procedure without difficulty. (Tr. 139). Examination of the plaintiff showed a shuffling gait, a painful range of motion, and normal muscle strength and tone. (Tr. 140).

On October 17, 2001, plaintiff returned to HealthSouth for reevaluation after the steroid injection. (Tr. 153). Plaintiff reported mild improvement to his lower back after the injection. (Tr. 153). Ms. Kicker noted improvements in plaintiff's lumbar range of motion, decreased tenderness, and increased flexibility. (Tr. 154). Ms. Kicker recommended that plaintiff attend rehabilitative therapy three times a week for three weeks in conjunction with a daily home exercise program. (Tr. 155). In the return visit on October 19, plaintiff reported improvement in his lower back pain with difficulty lifting and holding his daughter. (Tr. 151). Ms. Kicker recommended that he continue the treatment program. (Tr. 152). On October 22, plaintiff reported increasing pain throughout the weekend with the pain aggravated by repeated

activities. (Tr. 149). Ms. Kicker continued plaintiff's treatment program. (Tr. 150). On October 24, Ms. Kicker opined that plaintiff has achieved seventy percent of the program goals and referred plaintiff to a physician for re-examination. (Tr. 147). Plaintiff reported increased pain in his lower and upper back without being able to find a position of comfort. He was able to move in all directions but experienced increased pain with movement. (Tr. 142). Ms. Kicker noted that plaintiff tolerated the therapeutic treatment with moderate complaints of pain and difficulty. (Tr. 143).

On October 26, 2001, plaintiff reported two days of relief after the epidural steroid injection with the pain returning after that time. (Tr. 180). He achieved minimal progress in physical therapy reporting pain preventing him from increasing his exercise load. Examination revealed negative straight leg raise and moderately decreased lumbar flexion and extension with mild decreased lateral flexion to either side. Dr. Conway noted that plaintiff had a disc herniation at L5-S1 on the right, but the herniation did not correlate with his symptoms. Dr. Conway opined that he would release plaintiff with a permanent ten-pound lifting restriction based primarily on plaintiff's subjective complaints. Dr. Conway determined that plaintiff had a permanent partial disability of seven percent of his whole body attributable to his injury. Plaintiff refused Dr. Conway's recommendation of a work

hardening program. (Tr. 180). In the Return to Work Recommendations Record, Dr. Conway released plaintiff to sedentary work of lifting no more than ten pounds with bending, squatting, climbing, and twisting body restricted to one to ten times per hour. (Tr. 181).

On December 20, 2001, Dr. David Volarich, D.O., an independent medical consultant, completed an independent medical examination of plaintiff and reviewed the medical records forwarded by counsel. (Tr. 193-99). Dr. Volarich noted plaintiff's injury on March 19, 2001, while working as a stacker at Pioneer Home Center stacking trusses and his medical treatment for the injury. (Tr. 194). Plaintiff received chiropractic treatment from Dr. Stewart and physical therapy treatment from Dr. Hogancamp. On referral to Dr. Conway, plaintiff completed a course of physical therapy. Dr. Volarich noted that Dr. Conway placed plaintiff on a permanent ten-pound lifting limit and that plaintiff had received no more treatment and no additional injuries to his lower back. (Tr. 194). Plaintiff reported multiple problems stemming from his back injury including an inability to lift, hold, or carry anything because such activities cause him pain. (Tr. 195). His back pain increases if he sits or stands for more than forty-five minutes. He also reported lifting his daughter who weighs twenty-five pounds. When he experiences a flare up, plaintiff changes positions and stretches, but nothing alleviates his discomfort.

(Tr. 195).   Plaintiff reported not taking any medications and
smoking almost two packs of cigarettes a day.  (Tr. 196).

During the examination, Dr. Volarich observed that plaintiff
walked slowly and carefully without a limp, and that plaintiff
could hop on either foot without too much difficulty.  (Tr. 196-
97).   Examination revealed restricted lumbar motion with most of
plaintiff's pain in the lower back with flexion and extension.
(Tr. 197).   Straight leg raise was accomplished to eighty degrees
bilaterally without radicular, but plaintiff reported back pain
with the maneuver.    Based on his examination, Dr. Volarich
diagnosed L5-S1 disc protrusion to the right with intermittent
bilateral lower extremity paresthesias and moderately severe
myofascial pain syndrome.  (Tr. 197).  Dr. Volarich opined that for
plaintiff to improve his chronic pain syndrome, plaintiff would
require pain management including trigger point injections,
antidepressant therapy, anti-inflammatory medications, and
narcotics, if necessary.  If plaintiff's back pain persisted, Dr.
Volarich would recommend that a myelogram/CT be performed to
further evaluate plaintiff's back pain symptomatology.  (Tr. 198).
Based on his examination, Dr. Volarich found surgery not to be
indicated.   (Tr. 199).   Dr. Volarich found plaintiff able to
perform most activities of daily living and to care for himself.
With respect to his ability to work, Dr. Volarich opined that he
was "reluctant to offer permanent limitations referable to the low

back at this time since he has not achieved maximum medical improvement." (Tr. 199). Dr. Volarich restricted plaintiff's lifting to ten to twenty pounds and directed him to avoid as much as possible repetitive activities in the low back particularly bending, twisting, lifting, pushing, pulling, carrying, and similar tasks as well as impact activities. Dr. Volarich recommended that plaintiff stretch and walk as much as possible during the day and to stop smoking cigarettes. (Tr. 199).

On March 28, 2002, Dr. Conway reevaluated plaintiff at counsel's request. (Tr. 188). Dr. Conway noted that he had previously released plaintiff on October 26, 2001, "with a rating and 10 pound lifting restrictions." (Tr. 188). In the interim, Dr. Volarich treated plaintiff with additional pain management including trigger point injections, antidepressant therapy, and anti-inflammatory medications. Plaintiff reported constant pain between his shoulder blades toward the lower tips radiating into his lumbar area with the pain increasing with any kind of physical activity. He took Tylenol for pain and did not have a regular exercise program. Plaintiff stated that he obtained minimal relief from physical therapy modalities. Examination revealed moderately decreased lumbar range of motion in all planes and straight leg raise negative. Dr. Conway noted some tenderness in the left lumbar paraspinals at approximately L3 and L4 but no radiation of pain from these areas. (Tr. 188). Dr. Conway opined that

plaintiff had chronic thoracic and lumbar pain with no evidence of radiculopathy or myelopathy. (Tr. 189). Dr. Conway determined that there are no myofascial trigger points that could be injected. Dr. Conway opined that further physical therapy would not benefit plaintiff, and that plaintiff was not a candidate for trigger point injections. Dr. Conway did not schedule a follow-up visit. (Tr. 189).

On April 15, 2002, Dr. Volarich drafted an addendum to the independent medical evaluation based on his review of the reevaluation of plaintiff by Dr. Conway. (Tr. 190). Dr. Volarich noted that Dr. Conway prescribed Flexeril and Vioxx to help control plaintiff's pain syndrome and continued the ten-pound lifting limitation but did not recommend any additional pain management such as trigger point injections. Dr. Volarich opined that plaintiff had the following industrial disability hindering his ability to work:

> 1. There is a 25% permanent partial disability of the body as a whole rated at the thoracolumbar spine due to the L5 disc protrusion to the right causing intermittent bilateral lower extremity paresthesias and moderately severe myofascial pain syndrome. This rating accounts for back pain and lost motion as well. Additional disability exists in the low back, please see below.
>
> ***

2. There is a small amount of preexisting disability in the low back (5% or less) due to his historic lumbar syndrome that had essentially resolved leading up to 3/19/01.

(Tr. 190-91).[2]  Dr. Volarich found that plaintiff had achieved maximum medical improvement.  (Tr 191).  Dr. Volarich further opined that plaintiff was limited in repetitive bending, twisting, lifting, pushing, pulling, carrying, climbing, and other similar tasks.  Dr. Volarich determined that plaintiff could occasionally lift no more than ten pounds and that he should not lift any weight above his head or away from his body.  Dr. Volarich found that plaintiff should change positions frequently and avoid remaining in a fixed position, including sitting or standing, for more than thirty to forty-five minutes.  (Tr. 191).  Dr. Volarich recommended that plaintiff "pursue an appropriate stretching, strengthening, and range of motion exercise program in addition to non-impact aerobic conditioning such as walking, biking, or swimming to tolerance daily."  (Tr. 192).

In the Physical Residual Functional Capacity Assessment completed on August 27, 2002, Dr. Robert Sivens, listed lumbar disc

---

[2] "A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

herniation as plaintiff's primary diagnosis and myofascial pain syndrome as his secondary diagnosis. (Tr. 112). Dr. Sivens indicated that plaintiff's exertional limitations included that he could occasionally lift twenty pounds; could frequently lift ten pounds; could stand or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and was unlimited, other than as shown, in lifting and/or carrying. (Tr. 113). Dr. Sivens based his conclusions on plaintiff's allegation of constant pain with the pain increasing with mobility. Review of an MRI revealed a right pancentral disc protrusion. Dr. Sivens noted that on October 26, 2001, Dr. Conway released plaintiff with a ten pound lifting restriction based on plaintiff's subjective complaints. (Tr. 113-14, 117). Dr. Sivens indicated that plaintiff's postural limitations included that he could never balance; that he could occasionally climb, stoop, kneel, crouch and crawl; and that he could frequently balance. (Tr. 114). Dr. Sivens further indicated that plaintiff had no established manipulative limitations or visual limitations. (Tr. 115). With respect to communicative and environmental limitations, Dr. Sivens found none to be established. (Tr. 116). Based on his review of the medical records, Dr. Sivens opined that plaintif's allegations were partially credible, but the severity of plaintiff's symptoms appeared to be disproportionate to the objective evidence. (Tr. 117). Dr. Sivens noted that Dr. Conway's examination of October

26, 2001, revealed a decrease in plaintiff's spinal mobility with no difficulty in strength sensation and negative straight leg raising. (Tr. 117).

In a Report of Contact dated August 28, 2002, plaintiff reported not having any treatment or taking any medication for depression. (Tr. 120). Plaintiff opined that he did not need to be treated for depression because depression did not affect him or his functioning; only his physical conditions limited him. (Tr. 120).

On referral by Social Security Disability Determinations, Dr. Bobby Vitaya Enkvetchakul, an occupational environmental specialist, evaluated plaintiff on August 19, 2003. (Tr. 200-07). Plaintiff reported receiving no further medical treatment or evaluation since being released from Dr. Conway's care on October 26, 2001. (Tr. 200). Plaintiff reported continued back pain in between his shoulder blades and above the waistline in his lower back. With respect to daily activities, plaintiff stated that he makes his meals and occasionally helps with some housework, but he spends most of the day reclining on the couch watching television. Plaintiff reported not currently taking any medications. Plaintiff stated that he had been divorced since March 2003, but that he lived with his ex-wife and their two-year old daughter. Dr. Enkvetchakul observed that during the interview process, plaintiff remained seated in his chair shifting once or twice but otherwise

appeared in general to be comfortable.  Dr. Enkvetchakul noted that plaintiff was able to get out of the chair and move onto the examining table without assistance, but he complained of low back pain during these maneuvers.  Dr. Enkvetchakul observed that plaintiff ambulated very slowly with a wide-based gait but without a limp.  Examination revealed an active range of motion of his lumber spine being fairly well preserved with flexion of more than eighty degrees but an inability to extend into the full upright position.  (Tr. 200).  Dr. Enkvetchakul noted some mild tenderness to palpation diffusely over the lumbar paraspinal musculature and over the paraspinal muscles between the shoulder blades.  (Tr. 201).  Dr. Enkvetchakul opined that "[a] lot of his complaints are probably a result of his poor level of physical conditioning and resultant activity intolerance as opposed to any structural abnormality."  (Tr. 201).  Dr. Enkvetchakul further noted that plaintiff had multiple signs of symptom magnification consistent with a non-organic cause for his complaints.  As an example, Dr. Enkvetchakul cited plaintiff's admission of little activity during the day as a contributing factor to his poor level of conditioning and activity intolerance.  Dr. Enkvetchakul opined that most likely plaintiff's depression in conjunction with his deconditioning was causing his current complaints as opposed to any structural abnormality revealed by the MRI.  With respect to his work capabilities, Dr. Enkvetchakul opined that little objective

evidence supports any work restrictions except for some temporary work restrictions so that plaintiff could improve his overall physical conditioning. Dr. Enkvetchakul noted that plaintiff could sit during a normal eight-hour workday with usual breaks, could stand for a total of two hours in an eight-hour workday but not more than thirty minutes at a time, could occasionally lift thirty pounds and frequently lift ten pounds, and could handle and reach. (Tr. 201-02). Dr. Enkvetchakul further found that plaintiff would have no problems handling objects, speaking, or hearing. (Tr. 202). Dr. Enkvetchakul opined that plaintiff should not have trouble transporting himself to and from work and that plaintiff's work restrictions would improve as he improved his activity tolerance. (Tr. 202).

In the Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Enkvetchakul found that plaintiff could occasionally lift twenty-five pounds, frequently lift ten pounds, stand and/or walk for at least two hours in an eight-hour workday, unlimited sitting, and limited forward pushing and pulling until his physical conditioning improves. (Tr. 204-05). Dr. Enkvetchakul opined that plaintiff's long period of inactivity had caused the restrictions due to his poor physical condition, and such restrictions should lessen as plaintiff's physical condition improves. (Tr. 205). Dr. Enkvetchakul found that plaintiff could frequently balance, kneel, crouch, crawl, and stoop, and

occasionally climb. (Tr. 205). Dr. Enkvetchakul determined that plaintiff had unlimited manipulative and visual/communicative functions. (Tr. 206). With respect to environmental limitations caused by plaintiff's impairments, Dr. Enkvetchakul found that plaintiff was limited by temperature extremes, hazards, and fumes/odors/chemicals/gases. (Tr. 207).

The MRI of plaintiff's back completed on August 20, 2003, revealed no evidence of spondylolysis and normal width of the intervertebral disc spaces. (Tr. 209). Dr. D.J. Hawes noted in the Impression section that the MRI showed a normal radiographic study. (Tr. 209).

**IV. The ALJ's Decision**

The ALJ found that plaintiff met the disability insured status requirements on May 12, 2001, the date claimant alleged he became unable to work, and continued to meet them through March 31, 2005. (Tr. 18). The ALJ found that plaintiff had not engaged in substantial gainful activity since May 12, 2001, the alleged onset date of disability. The ALJ found that the medical evidence establishes that plaintiff has a lumbar disc herniation, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that plaintiff's allegations of symptoms precluding all work activity were not consistent with the evidence as a whole and were not persuasive. The ALJ further found

that plaintiff had the residual functional capacity to perform the physical exertion and non-exertional requirements of work except lifting over ten pounds and frequent bending and stooping. The ALJ opined that plaintiff is unable to perform his past relevant work as a floater/lead stacker and factory laborer. The ALJ noted that plaintiff is a younger individual with eleven years of education. The ALJ determined that the issue of whether plaintiff has transferable skills was not material in light of plaintiff's age and residual functional capacity. (Tr. 18).

Considering plaintiff's residual functional capacity, age, education, and work experience, the ALJ opined that plaintiff is not disabled. (Tr. 18-19). The ALJ thus concluded that plaintiff was not under a disability at any time through the date of his decision. (Tr. 19).

## V. Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will

be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404.1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is not the

equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his

findings, regardless of whether substantial evidence exists to support a different conclusion.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The claimant's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the claimant's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly assess his credibility regarding the impact his impairments have on his ability to work.  Plaintiff also contends that the ALJ erred in finding that he retained the residual functional capacity to perform a full range of sedentary, unskilled work.  In addition, plaintiff contends that the ALJ erred by

failing to elicit vocational testimony regarding his ability to perform substantial gainful activity.

### A.    Credibility Determination

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly assess plaintiff's credibility regarding the impact his impairments have on his ability to work.

The determination of a claimant's credibility is for the Commissioner, and not the Court, to decide. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987).  The ALJ may not discredit a claimant's complaints of pain solely because they are unsupported by objective medical evidence. <u>Jones v. Chater</u>, 86 F.3d 823, 826 (8th Cir. 1996); <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  Instead, the ALJ must also consider all of the evidence relating to the claimant's relevant work history, the absence of objective medical evidence to support the complaints, and third party observations as to:

1.    claimant's daily activities;

2.    duration, frequency and intensity of the pain/condition;

3.    dosage, effectiveness, and side effects of medication;

4.    precipitating and aggravating factors; and

5.    functional restrictions.

<u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Pain itself may be disabling.  See Loving v. Department of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994).  However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d at 826.  While there is no doubt that claimant experiences pain, the more important question is how severe the pain is.  Gowell, 242 F.3d at 796; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole.  Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989).  "[A]n ALJ must do more than rely on the mere invocation of "Polaski" to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995).  Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld.  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically.  The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and

consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). The ALJ's credibility findings are entitled to deference. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating plaintiff's subjective complaints of constant pain, the lack of prescribed pain medications, plaintiff's failure to take medications as prescribed, the lack of functional restrictions imposed by the treating physician, plaintiff's history of low earnings, and the testimony adduced at the hearing.[3] See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent

_____

[3]Although plaintiff testified that he could not afford medical treatment due to lack of finances and insurance, the record is devoid of any evidence suggesting that he sought any treatment offered to indigents or chose to forgo smoking almost two packs of cigarettes a day to help finance medical treatment or pain medication. See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability).

statements, lack of pain medications, and extensive daily activities). The lack of objective medical basis to support the plaintiff's subjective descriptions is an important factor the ALJ could properly consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

The ALJ also addressed several inconsistencies in the record to support his conclusion that plaintiff's complaints of constant pain were not credible. Specifically, the ALJ noted that no treating physician stated that plaintiff was disabled or unable to work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations except for the ten pound lifting

restriction. Indeed, the ALJ noted how plaintiff's unimpressive work record and history of relatively low earnings detracts from his credibility. In particular, plaintiff stopped working because he was fired, not because of his alleged impairment. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (lack of work history may indicate a lack of motivation to work rather than lack of ability); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility is lessened by a poor work history). The ALJ also noted that plaintiff did not seek regular and sustained treatment for his impairment as demonstrated by the gap in treatment from October 26, 2001, through the date of the ALJ's decision. See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition). Likewise, the medical record is devoid of any evidence showing that plaintiff's condition had deteriorated, required aggressive medical treatment, or precluded him from working in the past. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir.

1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition). The ALJ noted that there is no medical evidence showing that plaintiff required surgery. Plaintiff's lack of consistent medical treatment for his constant back pain was inconsistent with his complaints of disabling pain. Moreover, the ALJ stated that despite plaintiff's testimony regarding disabling pain, plaintiff testified to using only over-the-counter medication, such as Tylenol, for his pain. Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (holding that pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability); Loving v. Department of Health & Human Servs., 16 F.3d 967, 971 (8th Cir. 1994) (finding that taking over-the-counter analgesics was inconsistent with complaints of disabling pain). The ALJ also cited plaintiff's embellishment regarding the severity of his limitations to Dr. Volarich during the independent medical examination as another factor detracting from plaintiff's credibility. During the examination, plaintiff reported severe limitations, but he did not report these limitations two months earlier on October 26, 2001, his last visit with Dr. Conway. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003) (noting that an ALJ may discount claimant's allegations if there is evidence that claimant was a malinger or was exaggerating symptoms for financial gain). Plaintiff told Dr.

Conway that he could not lift twenty pounds but during the examination by Dr. Volarich, he admitted to lifting twenty-five pounds, the weight of his daughter. <u>See Ply v. Massanari</u>, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). The record before the Court is devoid of any documents showing treatment by a psychiatrist or a counselor.

The Court finds that the ALJ properly considered plaintiff's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from plaintiff's credibility. <u>See Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, the courts normally defer to his credibility determination). The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. <u>Battles v. Sullivan</u>, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to detract from the plaintiff's credibility. Those included plaintiff's minimal, ongoing treatment for pain, his lack of work restrictions by any physicians, lack of consistency in reporting limitations, lack of prescribed pain medications, unimpressive work record, and history of relatively low earnings. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. <u>Robinson v.</u>

<u>Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting plaintiff's subjective complaints of constant pain. See <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain). Accordingly, this claim is without merit.

### B. **Residual Functional Capacity**

Plaintiff argues that the ALJ erred in finding that he retained the residual functional capacity to perform a full range of sedentary, unskilled work.

At step three of the evaluation process the ALJ found that the plaintiff has a lumbar disc herniation, but that he does not have an impairment or combination of impairments listed in, or medically equal, to a listed impairment. At step four, the ALJ found that the plaintiff is unable to perform his past relevant work as a floater/lead stacker or factory worker since May 12, 2001. But, the ALJ found that the claimant retains the residual functional capacity ("RFC") to perform the physical exertion and non-exertional requirements of the full range of sedentary work except lifting over ten pounds and frequent bending and stooping. Thus,

the ALJ determined that the plaintiff is able to perform a full range of sedentary work existing in significant numbers in the national economy since May 12, 2001.

"The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant, and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a

claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). See also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989); Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See

also <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. <u>See</u> <u>McGeorge v. Barnhart</u>, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

The ALJ's determination of the plaintiff's RFC is supported by substantial evidence in the record. The ALJ properly evaluated the medical evidence in the record, including the reports of Drs. Conway and Volarich and the consultative report by Dr. Enkvetchakul, and opined that the medical evidence diminishes plaintiff's credibility. The ALJ noted that at the time of the hearing, plaintiff had not received any medical treatment for his allegedly severe impairment for over one year since being released by Dr. Conway on October 26, 2001.

The ALJ also noted that during the evaluation Dr. Enkvetchakul observed that plaintiff remained seated and appeared to be generally comfortable, although he shifted in the chair once or twice. Dr. Enkvetchakul further noted that plaintiff was able to rise from the chair without difficulty and move onto the examining table without assistance. Dr. Enkvetchakul observed that plaintiff ambulated very slowly with a wide-based gait but without a limp. Dr. Enkvetchakul's examination of plaintiff revealed an active

range of motion of his lumber spine being fairly well preserved, and some mild tenderness to palpation diffusely over the lumbar paraspinal musculature and over the paraspinal muscles between the shoulder blades.  Dr. Enkvetchakul opined that "[a] lot of his complaints are probably a result of his poor level of physical conditioning and resultant activity intolerance as opposed to any structural abnormality."  Dr. Enkvetchakul further opined that plaintiff had multiple signs of symptom magnification consistent with a non-organic cause for his complaint.  With respect to his work capabilities, Dr. Enkvetchakul opined that little objective evidence supports any work restrictions except for some temporary work restrictions so that plaintiff could improve his overall physical conditioning.  Dr. Enkvetchakul noted that plaintiff could sit during a normal eight-hour workday with usual breaks, could stand for a total of two hours in an eight-hour workday but not more than thirty minutes at a time, could occasionally lift thirty pounds and frequently lift ten pounds, and could handle and reach. The ALJ further noted that the medical record does not show that any physician found plaintiff unable to work.  The ALJ further opined that plaintiff's assertions regarding the intensity and frequency of symptoms were inconsistent with his history of treatment, and the medical records further disclose that plaintiff's physical ailments were, or could be, controlled by medication.  The ALJ also properly considered the <u>Polaski</u> factors

in concluding that "claimant lacks credibility in other respects." (Tr. 13). The ALJ listed facts from the record regarding the Polaski factors that reflected upon the plaintiff's ability to perform sedentary work such as his ability to lift his daughter, failure to receive consistent medical treatment, the lack of functional restrictions except for the lifting restriction, and lack of pain medication except for over-the-counter medications. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against claimant's credibility. Those included claimant's gap in medical treatment, his admission to Dr. Volarich regarding his ability to lift twenty-five pounds without difficulty, absence of prescribed pain medications, failure to follow prescribed course of treatment, absence of any doctor finding claimant disabled or imposing any functional limitations beyond the lifting restriction, lack of medical treatment, possible ulterior purpose for the disability filing, poor earnings record, and poor work history.

Based on the ALJ's analysis of the medical evidence and plaintiff's credibility, the Court finds that there exists in the record substantial evidence to support a finding that the plaintiff retains an RFC to perform a full range of sedentary work. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Notably, plaintiff was free to provide evaluations

supporting his contentions. <u>See</u> 20 C.F.R. § 404.1512(c) ("Your responsibility.... You must provide evidence showing how your impairment(s) affects your functioning during the time you say that your are disabled, and any other information that we need to decide your case."); <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004) ("A disability claimant has the burden to establish [his] RFC.").

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the decision of the ALJ denying plaintiff's claims for benefits should be affirmed.

## C. __Vocational Expert Testimony__

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because it lacks vocational expert testimony regarding his ability to perform substantial gainful activity. This argument is without merit.

Plaintiff contends that because the ALJ did not properly discredit his complaints of pain, the ALJ was required to elicit

vocational expert testimony.  As discussed above, the Court finds that the ALJ properly discredited the plaintiff's complaints of pain.  The ALJ properly determined that plaintiff retains the residual functional capacity to lift no more than ten pounds, sit approximately six hours in an eight-hour workday, and no significant stooping.  The ALJ explained that plaintiff's residual functional capacity is supported by Dr. Volarich's assessment limiting claimant to sedentary work activity with a sit/stand option.

Generally, when a claimant has a nonexertional impairment, such as pain, the ALJ must obtain testimony from a vocational expert in order to satisfy the Commissioner's burden at step five of the sequential evaluation process.  Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995).  However, where, as here, the ALJ properly discredits the claimant's complaint of a nonexertional impairment, the ALJ is not required to consult with a vocational expert and may properly rely on the vocational guidelines at step five.  Id.; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994).

As discussed above, the ALJ sufficiently discredited claimant's complaints of pain.  "When a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden [at the fifth step] may be met by use of the [Medical -Vocational Guidelines]."  Naber, 22 F.3d at 189-90 (quotations omitted).

Thus, the ALJ committed no error by using the Medical-Vocational Guidelines to determine whether plaintiff was disabled.

For the foregoing reasons, the Court concludes that the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, the Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning</u>, 958 F2d at 821. Accordingly, the decision of the ALJ denying claimant's claims for benefits should be affirmed.

Accordingly,,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **affirmed** and that this complaint be **dismissed with prejudice**.

Dated this 26th day of September, 2005.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE